## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| PRESTON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 15-cv-50154 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| NORTHERN ILLINOIS UNIVERSITY | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

NOW COMES, the Plaintiff, PRESTON BROWN, by and through his counsel, CUTLER LAW GROUP and SHERRER & BURTNETT, LLC, and complaining of Defendant, NORTHERN ILLINOIS UNIVERSITY, states as follows:

## PRELIMINARY STATEMENT

This is an action seeking redress for violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq*. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, as amended ("Section 1981"), 42 U.S.C. § 1981; the Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d); 215(a); 216 *et seq*; the Illinois Equal Pay Act ("IEPA"), 820 ILCS 112/1 *et seq*, as well as an Illinois common law claim for breach of employment contract. Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendant's discriminatory employment practices against Plaintiff because of his race and gender, retaliation due to complaining of Defendant's unlawful employment practices, and breach of contract.

## PARTIES

1.    Plaintiff PRESTON BROWN (hereinafter "Plaintiff" or "Brown") is an African-American male citizen of the State of Illinois residing in Chicago, Illinois.

2.    Defendant NORTHERN ILLINOIS UNIVERSITY (hereinafter "Defendant" or "NIU") is and was at all times material hereto, a public university located in DeKalb, Illinois. At all times relevant to Plaintiff's claims, Defendant has employed fifteen (15) or more employees. At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

## JURISDICTIONAL STATEMENT

3.    NIU's principal place of business is located in the County of DeKalb, City of DeKalb, State of Illinois, in the Northern District of Illinois, Western Division. Jurisdiction of this Court is invoked pursuant to § 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)]), 28 U.S.C. §§ 1343(a)(3) and (4), 28 U.S.C. § 1331, as well as supplemental jurisdiction under § 1367(a) of the Judicial Code [28 U.S.C. § 1367]. Brown seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

4.    Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) in that the majority of the operative facts in this case took place at Northern Illinois University, located in the County of DeKalb, City of DeKalb, State of Illinois, in the Northern District of Illinois, Western Division, and the unlawful employment practices giving rise to Brown's claims occurred in this District and Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.    Brown has met all of the administrative prerequisites to bringing an action in federal court under Title VII in that he timely filed a charge against NIU asserting the acts of

discrimination on account of his gender and race indicated in this Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), on or about April 3, 2015. EEOC Charge No. 440-2015-03214 is attached to this Complaint as Exh. A.

6.      The EEOC issued a Notice of Right to Sue on Charge No. 440-2015-03214 on April 8, 2015. A copy of the Notice of Right to Sue is attached to this Complaint as Exh. B.

7.      Plaintiff filed a second charge for retaliation and discrimination on account of his gender and race on or around June 10, 2015. Charge No. 440-2015-05120 is attached to this Complaint as Exh. C.

8.      As such, Plaintiff's Complaint is timely filed within ninety (90) days of the receipt of his Notice of Right to Sue.

9.      Any and all other prerequisites of this suit have been met.

### COMMON ALLEGATIONS

10.      Brown is an African-American male.

11.      NIU is a public university located in DeKalb, Illinois.

12.      Brown began working at NIU on or around December 1, 2012 as a Research Associate/Assistant to the Associate Vice President for Enrollment Management in the Department of Enrollment Management.

13.      Brown's initial appointment as Research Assistant was for seven (7) months, with a subsequent twelve (12) month annual renewal period. Brown was paid $4,583.33 per month for performing the functions of a full-time research assistant. NIU's supportive professional staff handbook defines a typical scheduled full-time work week as 37.5 hours.

14.      Upon information and belief, NIU renewed Brown's appointment contract in 2013 and 2014.

15. In the beginning of Brown's employment with NIU, a Research Associate from a separate Department, the Office of Testing Services, assisted the Department of Admissions with management of enrollment software ("Hobsons") on a part-time basis (approximately twenty [20] hours per week, while handling other duties). On or around July 31, 2013, this part-time research associate resigned from his employment with NIU.

16. Around the same time, Brown's supervisor, Kimberly Buster-Williams, Acting Associate Vice President of Enrollment Management, ordered Brown to assume the job responsibilities of the resigned part-time research associate. Upon information and belief, these job responsibilities were not within Brown's job description.

17. Brown told Buster-Williams that he would assume the extra duties if he received additional compensation as the assigned duties were outside the scope of his job description.

18. NIU did not give Brown any additional compensation for the additional extra twenty (20) plus hours of work he was instructed to perform.

19. On or around August 31, 2013, Buster-Williams sent an email to Sharon Handelsman, Interim Director of Admissions, with regard to restructuring, job titles, and staffing in the Office of Admissions.

20. Buster-Williams told Handelsman that Brown should no longer perform "admissions work" as he already had been assigned projects in Enrollment Management.

21. Buster-Williams also informed Handelsman that she had been given additional compensation when she had performed the functions of two jobs (Director of Admissions and Acting Associate Vice President of Enrollment Management). Buster-Williams told Handelsmen Brown should also be given additional compensation for assuming the duties of a resigned employee.

4

22.    In response, Handelsman created several alternate compensation structures for the Department which would give Brown additional compensation. Upon information and belief, these alternate compensation structures were presented to the Vic-President of Student Affairs and Enrollment Management, Dr. Eric Weldy, who, on information and belief, presented them to the President of NIU, Douglas Baker (Caucasian). However, none of these alternate compensation structures were implemented and Brown did not receive any additional compensation.

23.    On or around September 27, 2013, Handelsman stated to Brown via email that she was attempting to remove his additional work responsibilities. However, NIU did not remove any of Brown's additional responsibilities. In fact, NIU began giving Brown *more* duties and projects outside his job description without additional compensation.

24.    Upon information and belief, President Baker had to approve all compensation requests for all Departments at NIU. Upon information and belief, the decision not to give Brown additional compensation was made by President Baker.

25.    Also on or around September of 2013, Handelsman met with Plaintiff. Handelsman told Plaintiff that the Associate Director of Marketing/Hobsons EMT, Michele Hill (Caucasian, female) was not performing her job duties. Handelsman asked Brown to assume the job responsibilities of Hill, including emailing all prospective students for the fall 2014 semester.

26.    Brown stated to Handelsman that he would only perform the duties of Hill if he received additional compensation. Handelsman states she would discuss Brown's compensation with Dr. Eric Weldy, the Vice President of Student Affairs.

27.     NIU did not give Brown additional compensation, however, on or around October 2013, Brown assumed all of Hill's job responsibilities. Hill was then transferred to the Office of Admissions' call center.

28.     Hill's transfer left the Associate Director of Marketing/Hobsons EMT vacant.

29.     However, NIU did not promote Brown to the Associate Director position or grant him any additional compensation.

30.     On or around October 16, 2014, Dr. Weldy met with Brown and stated that he would not review Brown's request for additional compensation. Upon information and belief, this decision was also made by President Baker.

31.     Upon information and belief, Brown inquired several more times with Handelsman regarding when he would be receiving his additional compensation as Handelsman was tasked with restructuring the Office of Admissions by NIU.

32.     In March 2014, Handelsman informed Brown that NIU had again denied his request for additional compensation. Handelsman left NIU in June 2014. Throughout the time in question, Brown never received additional salary for additional work performed by him.

33.     Throughout the time in question, Brown performed the work of two and one-half full-time positions but was only compensated for his role as one full-time Research Assistant.

34.     After Brown's requests for additional compensation were denied, his additional responsibilities were not removed.

35.     Due to his increased workload, Brown experienced severe stress, anxiety, insomnia, and mental anguish.

36.     At all relevant times Brown was an above-average job performer. On or around May 20, 2014, Brown received "exemplary" or "exceeds expectations" on all categories of his performance review.

37.     On January 8, 2015, Dr. Weldy met with Brown and informed Brown that his request for additional compensation was again denied. Upon information and belief, Dr. Weldy was hired by and was supervised by President Baker. Upon information and belief, President Baker made the decision to deny Brown's request for additional compensation.

38.     On or around January 27, 2015, Brown filed an internal grievance for arbitrary, capricious, or oppressive treatment pertaining to application of benefits and terms and conditions of employment.

39.     On February 11, 2015, Dr. Weldy responded to Brown's grievance and again denied his request for additional compensation. Upon information and belief, this decision was also made by President Baker.

40.     On March 9, 2015, Brown was constructively discharged by NIU due to its failure to adequately compensate him for work performed.

41.     Upon information and belief, coworkers similarly situated to Brown were granted additional compensation for performing additional work, including, but not limited to, Crystal Garvey (Enrollment Management Associate) (Caucasian) and Dan House (Director of Institute Research)(Caucasian).

## COUNT I

### Violation of Title VII—Discrimination based on race and gender

42.     Plaintiff realleges and incorporates by reference paragraphs 1-41 as paragraph 42 of Count I.

7

43.     NIU discriminated against Brown by repeatedly denying his requests for additional compensation for additional work performed. NIU denied Brown's requests for raises and/or additional compensation on or around August 2013, September 2013, October 2014, March 2014, January 8, 2015, and February 11, 2015.

44.     Upon information and believe, non-black and/or female employees were granted additional compensation for assuming additional job responsibilities.

45.     NIU also refused to promote Brown to an Associate Director position, despite giving him all the additional responsibility of a non-black, female Associate Director who was not adequately performing her job.

46.     Furthermore, NIU discriminated against Brown by constructively discharging him from his employment. By refusing to adequately compensate him for work performed. Brown's working environment became intolerable and he was forced to resign on March 9, 2015.

47.     The effect of NIU's discriminatory employment practices has been to deny Brown equal employment opportunities, income in the form of wages, health insurance, and other benefits of employment because of his race.

48.     Moreover, Brown suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to the denial of his requests for promotion and raises and his constructive discharge.

49.     Brown also suffered lost future earnings based upon his constructive discharge.

50.     NIU engaged in these discriminatory practices with malice or reckless indifference to Brown's federally protected rights.

WHEREFORE, Brown prays that this Honorable Court enter judgment in his favor and:

(a)     declare that the acts and practices complained of are violations of Title VII, as amended;

(b)     direct NIU to make Brown whole for all earnings and benefits he would have received but for NIU's discriminatory treatment, including awarding him back pay, prejudgment interest, damages for all employment benefits lost, and any other recoverable compensatory damages;

(c)     award Brown damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to the discriminatory acts described herein;

(d)     award Brown lost future earnings;

(e)     direct NIU to pay punitive damages based upon its actions;

(f)     award reasonable attorney's fees and costs; and

(g)     order any other relief that the Court deems just and equitable.

## COUNT II

### Violation of Title VII – Retaliation

51.     Brown realleges and incorporates by reference paragraphs 1-50 as paragraph 51 of Count II.

52.     Brown engaged in protected activity by filing an internal grievance on January 27, 2015.

53.     NIU retaliated against Brown by refusing to promote him and denying his requests for additional compensation for additional work after he filed his internal grievance.

54.     NIU also retaliated against Brown by constructively discharging him from his employment on or around March 9, 2015.

55.     NIU, by the actions and/or omissions alleged, retaliated against Brown in violation of Title VII.

56.     The effect of NIU's retaliatory employment practices has been to deny Brown equal employment opportunities, income in the form of wages, health insurance, and other benefits of employment.

57.     Moreover, Brown suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to NIU's discriminatory employment practices.

58.     Brown suffered lost future earnings due to NIU's discriminatory employment practices.

59.     NIU engaged in these discriminatory practices with malice or reckless indifference to Brown's federally protected rights.

WHEREFORE, Brown prays that this Honorable Court enter judgment in his favor and:

(a)     declare that the acts and practices complained of are violations of Title VII, as amended;

(b)     direct NIU to make Brown whole for all earnings and benefits he would have received but for NIU's discriminatory and retaliatory treatment, including awarding him back pay, prejudgment interest, damages for all employment benefits he lost, and any other recoverable compensatory damages;

(c)     award Brown damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to her firing;

(d)     award Brown lost future earnings;

(e)     direct NIU to pay punitive damages based upon its actions;

(f)     award reasonable attorney's fees and costs; and

(g)     order any other relief that the Court deems just and equitable.

## COUNT III

### Violation of Section 1981—Discrimination based on race

60.     Brown realleges and incorporates by reference paragraphs 1-59 as paragraph 60 of Count III.

61.     NIU intentionally discriminated against Brown in violation of Section 1981 by refusing to promote him and giving him additional work assignments while denying his requests for raises and/or additional compensation on or around August 2013, September 2013, October 2014, March 2014, January 8, 2015, and February 11, 2015.

62.     Upon information and believe, non-black employees were granted additional compensation for assuming additional job responsibilities.

63.     NIU also refused to promote Brown to an Associate Director position, despite giving him all the additional responsibility of a non-black Associate Director who was not adequately performing her job.

64.      NIU intentionally discriminated against Brown on the basis of his race when he was constructively discharged on or around March 9, 2015.

65.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to: depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66.     Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of punitive damages.

WHEREFORE, Brown prays that this Honorable Court enter judgment in his favor and:

(a)     declare that the acts and practice complained of are violations of Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981;

(b)     direct Defendant to make Plaintiff whole for all earnings and benefits he would have received but for Defendant's discriminatory treatment, including awarding Plaintiff back pay, front pay, prejudgment interest, damages for all employment benefits he lost, and any other recoverable compensatory damages;

(c)     award punitive damages;

(d)     award reasonable attorney's fees and costs; and

(e)     order any other relief that the Court deems just and equitable.

## COUNT IV

### Violation of Section 1981—Retaliation

67.     Brown realleges and incorporates by reference paragraphs 1-66 as paragraph 67 of Count IV.

68.     Brown engaged in protected activity by filing an internal grievance on January 27, 2015.

69.     NIU retaliated against Brown by refusing to promote him and denying his requests for additional compensation for additional work after he filed his internal grievance.

70.     NIU also retaliated against Brown by constructively discharging him from his employment on or around March 9, 2015.

71.     NIU, by the actions and/or omissions alleged, retaliated against Brown in violation of Section 1981.

72.     The effect of NIU's retaliatory employment practices has been to deny Brown equal employment opportunities, income in the form of wages, health insurance, and other benefits of employment.

73.     Moreover, Brown suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses due to NIU's retaliatory employment practices.

74.     Brown suffered lost future earnings due to NIU's retaliatory employment practices.

75.     NIU engaged in these retaliatory practices with malice or reckless indifference to Brown's federally protected rights.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor and:

(a)     declare that the acts and practice complained of are violations of Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981;

(b)     direct Defendant to make Plaintiff whole for all earnings and benefits he would have received but for Defendant's discriminatory treatment, including awarding Plaintiff back pay, front pay, prejudgment interest, damages for all employment benefits he lost, and any other recoverable compensatory damages;

(c)     award punitive damages;

(d)     award reasonable attorney's fees and costs; and

(e)     order any other relief that the Court deems just and equitable.

## COUNT V

### Violation of the Equal Pay Act

76.     Brown realleges and incorporates by reference paragraphs 1-75 as paragraph 76 of Count V.

77.     Upon information and belief, NIU paid wages to Brown at a rate less than the rate it paid to other employees of the opposite sex for the same or substantially similar work, including Michele Hill, Kimberly Buster-Williams, and Crystal Garvey.

78.      Brown performed work that required equal skill, effort, and responsibility to that of female employees.

79.     Brown performed such work under similar working conditions as female employees.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor and:

(a)     declare that the acts and practice complained of are violations of the EPA;

(b)     direct Defendant to make Plaintiff whole for all earnings and benefits she would have received but for Defendant's violations, including the entire amount of the underpayment with interest;

(c)     award an additional equal amount as liquidated damages;

(d)     award reasonable attorney's fees and costs;

(e)     order any other relief that the Court deems just and equitable

## COUNT VI

### Violation of the Illinois Equal Pay Act (IEPA)

80.     Brown realleges and incorporates by reference paragraphs 1-79 as paragraph 80 of Count VI.

14

81.   Upon information and belief, NIU paid wages to Brown at a rate less than the rate it paid to other employees of the opposite sex for the same or substantially similar work, including Michele Hill, Kimberly Buster-Williams, and Crystal Garvey.

82.   Brown performed work that required equal skill, effort, and responsibility to that of female employees.

83.   Brown performed such work under similar working conditions as female employees.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor and:

(a)   declare that the acts and practice complained of are violations of the IEPA;

(b)   direct Defendant to make Plaintiff whole for all earnings and benefits he would have received but for Defendant's violations, including the entire amount of the underpayment with interest;

(c)   award reasonable attorney's fees and costs;

(d)   impose a statutory civil penalty against NIU of $2,500.00 per violation;

(e)   order any other relief that the Court deems just and equitable

## COUNT VII

### Breach of Employment Contract

84.   Brown realleges and incorporates by reference paragraphs 1-83 as paragraph 84 of Count VII.

85.   Brown's appointment with NIU was an employment contract as it was a formal written agreement for a specified duration and a specified rate of pay.

86.   Brown's contractual agreement with NIU was to perform the functions of a Research Assistant in the Department of Enrollment.

15

87.    Brown gave consideration in the form of Research Assistant work performed according to the duties outlined in his job description. At all times Brown fulfilled his duties under the contract and was ready, willing, and able to continue performing the terms of his contract in a satisfactory manner.

88.    However, NIU breached its employment agreement with Brown by substantially changing the terms and conditions of his employment.

89.    NIU gave Brown additional assignments outside his job description, causing him to work substantially more than a full time employee (more than 37 hours per week) without any increase in pay.

90.    Brown agreed only to work in the Department of Enrollment Management, but NIU gave Brown additional duties from the Department of Testing Services that were outside the scope of his job description.

91.    NIU also gave Brown the additional marketing duties that were the job responsibilities of Hill and not within his job description.

92.    NIU's violation of its agreement with Brown coerced him into resigning from his position on or around March 9, 2015.

93.    Brown's resignation is a constructive discharge due to NIU's breach as his working environment was objectively unreasonable.

94.    As a proximate result of NIU's breach of the employment contract, Plaintiff has suffered and continues to suffer lost earning and other benefits in an amount to be established at trial.

WHEREFORE, Brown prays that this Honorable Court enter judgment in his favor and grant him:

(a)  pecuniary damages for breach of contract including lost earnings and other

employee benefits, including interest;

(b)  compensatory damages including emotional distress, humiliation, and mental

anguish;

(c)  reasonable attorney's fees and costs; and

(d)  any such other and further relief as may be just in law and in equity.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiff hereby requests a jury trial on all issues of fact and law raised by the allegations

in this Complaint.


Dated: July 6, 2015                                  Respectfully Submitted,

                                                     PRESTON BROWN

                                        By:    /s/ Clarissa Y. Cutler
                                               Clarissa Y. Cutler
                                               Attorney for Plaintiff


Clarissa Y. Cutler, #6257909
Alexandra Tropea, #6310352
Cutler Law Group
155 North Michigan Avenue, Suite 500
Chicago IL 60601
(312) 729-5067
Fax: (312) 729-5056

Justin Burtnett, #6281100
Sherrer & Burtnett, LLC
155 North Michigan Avenue, Suite 500
Chicago IL 60601
(312) 574-0155
Fax: (312) 489-2290