IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| **PRESTON BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 15-cv-50154 |
| | ) | |
| v. | ) | Hon. Philip G. Reinhard |
| | ) | |
| **NORTHERN ILLINOIS UNIVERSITY,** | ) | Mag. Iain D. Johnston |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff PRESTON BROWN, in response to Defendant Northern Illinois University's Motion for Summary Judgment, by and through his attorneys Burtnett Law Office LLC and Clarissa Y. Cutler, hereby states in response:

**I.     INTRODUCTION**

In the case at bar, the Plaintiff has a three court Complaint, based upon (1) Race and Gender Discrimination under Title VII, (2) Retaliation and (3) a Claim under the Equal Pay Act. At this time, Plaintiff has chosen not to proceed with the retaliation count, and as such, that count should be dismissed. However, with respect to the other two Counts, Plaintiff believes that he has shown, specifically through the testimony of neutral witnesses and former employees of the school, that he was discriminated against due to race and gender based upon the pay disparities

that occurred, and that moreover, Northern Illinois University (hereinafter "NIU") was violative of the Equal Pay Act in their treatment of him.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if the movant can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In employment cases, "intent and credibility are "frequently critical issues" that "in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment." *Howard v. Inland SBA Management Corporation*, 32 F.Supp.3d 941, 954 (N.D.Ill. 2014). In reviewing a motion for summary judgment, the Court must construe all conflicting evidence in favor of the non-moving party and "accord her the benefit of all reasonable inferences that may be drawn from the record." *Id*.

## III. DEFENDANT'S MISUSE OF THE COURT'S DECEMBER 17, 2015 ORDER

One matter that must be discussed at the very start of this response is exactly what this Honorable Court stated in it December 17, 2015 Order granting partial dismissal of this action. Here, the Defendant has attempted to take the Court's ruling and use it for several findings far afield from what was actually ordered, in a way that seems somewhat disingenuous.

In the Order, which was only dealing with Title VII issues, the court stated that under Title VII, "all discrete discriminatory acts that occurred before June 7, 2014 are outside the statutory limitations period," and thus ruling that any such actions were "untimely to the extent plaintiff seeks damages for failure to increase his compensation on those dates." (Court's 12/17/15 Order, Dkt. No. #39, p.4-5). The court then specifically barred the August 2013 and

September 2013 claims as "untimely" as discrete discriminatory acts. This was the extent of the Court's ruling.

Here, however, in their Motion, the State attempts to use this ruling to bar matters far beyond the actual scope of the Order. For example, while the court has ruled that these pre-July 2014 requests are not actionable as individual discrete actions, there no decision by this Court that any use of such information, especially in showing an ongoing pattern, is somehow barred; nor that if there was an ongoing offense, that it would be barred. This is not what the Defendant believes the prior Order stated. Rather the Defendant believes that the Court's ruling was a limited ruling, specifically within the Title VII context, and that it only limited that damages could not be sought for these specific discrete discriminatory actions. Obviously though, the Court will have the final say as to what the previous order actually entailed or considered.

The State attempts to further use the Order to bar the Plaintiff's claim under the Equal Pay Act, stating that comparisons to Crystal Garvey and Michele Hill are untimely, as they are barred by the 300 day rule. However, there is <u>no such bar or statute of limitations under the Equal Pay Act</u>. The EEOC explains as follows:

> An individual alleging a violation of the EPA may go directly to court and is not required to file an EEOC charge beforehand. The time limit for filing an EPA charge with the EEOC and the time limit for going to court are the same: within two years of the alleged unlawful compensation practice or, in the case of a willful violation, within three years. The filing of an EEOC charge under the EPA does not extend the time frame for going to court.
>
> *https://www.eeoc.gov/laws/types/equalcompensation.cfm*

As such, there is absolutely no bar to the Plaintiff's claim due to the 300 day rule, as Equal Pay Act complaints are not even required to go through the EEOC prior to filing.

3

Moreover, the Court's Order was specifically with regard to Title VII issues, not the Equal Pay Act.

Time and again, the Defendant in this action attempts to use the Court's previous ruling in a way that was never considered by the Court. This, along with their use of other questionable dates, such as using Michele Hill's change of position within the same department as an effective date in an attempt to bar Hill, as a comparator, shows that the Defendants are attempting to avoid liability by smoke and mirrors. Thus, such facts and dates, how they occurred and whether they were ongoing are matters that need to be looked at closely in the Court's consideration of this brief.

**IV.     DEFENDANT'S FACTS AND PLAINTIFF'S BASIC FACTUAL BACKGROUND**

Throughout their statement of facts and their brief in this matter, the Defendants attempted to attack the testimony of the Plaintiff by using only his testimony and the testimony of Dr. Eric Weldy. In their brief, in an attempt to attack the Plaintiff's credibility, the State used terms such as "according to Plaintiff," "Plaintiff contends," "Plaintiff maintains," etc (Defendant's Motion to Dismiss, Dkt. No. 66, p. 2). The facts as presented by the Defendant are in no way construed "in favor of the non-moving party" as required.

Moreover, and maybe even more strikingly, the Defendant's Motion basically ignores the deposition testimony of independent witnesses and former employees Sharon Handelsman and Kimberly Buster-Williams. During nearly all relevant times, these two individuals served as direct supervisors to the Plaintiff (Sharon Handelsman as Special Assistant to Vice-President of Student Affairs and Enrollment Management and Interim Director of Admissions, and Kimberly Buster-Williams as Director of Admissions and interim Associate Vice President for Enrollment

Management (Plaintiff's Facts, ¶1-4). These two depositions are virtually ignored by the Defendant. As such, the Plaintiff in this matter, rather than using his own words, leans heavily on the testimony of these two individuals, as they are truly independent witnesses, and show why a reasonable jury could find for the Plaintiff in this matter.

At all relevant times during the case at bar, the Plaintiff, a black male was employed as a Research Analyst in the Admissions Department of NIU (Defendant's Rule 56 Facts, ¶7). The specific duties that the Plaintiff was responsible for changed over his time in the department, but initially he was responsible for various reports, weekly enrollment reports and other data related projects as assigned (Defendant's Rule 56 Facts, ¶8). Up until the Summer of 2013, Plaintiff had a part-time research associate assisting him in his duties, however, when he left in 2013, his duties transferred to Plaintiff (Defendant's Rule 56 Facts, ¶12-15). Plaintiff did not receive any additional pay at that time.

In October of 2013, the Plaintiff took over a large amount of the job responsibilities of his co-worker, Michele Hill, in fact, by some estimates the amount taken was nearly half of her job (Defendant's Rule 56 Facts, ¶16; Plaintiff's Fact ¶##). Ms. Hill receives $15,000 more a year in salary than Plaintiff (Plaintiff's Fact ¶##). Thus, the Plaintiff was doing the job responsibilities of multiple individuals, and was being paid less than Hill, many of whose duties had been assigned to the Plaintiff. As set forth below, this process continued throughout 2014 and 2015, while other non-white and non-male employees were repeatedly paid for taking on such extra work, and despite the Plaintiff's supervisor going to the decision maker, Dr. Eric Weldy, asking for money for the Plaintiff. Time and again, the Plaintiff was not given a raise, often with Dr.

Weldy failing to even respond to the requests. This was in complete contrast to how other non-white individuals and females were treated under Dr. Weldy.

## V. TITLE VII PLAINTIFF'S ARGUMENT

Under Title VII of the Civil Rights Act of 1964, as amended, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. §2000e-2(m). Recently in the *Ortiz* case, as cited to by Defendant, the Seventh Circuit, very specifically set forth a new governing test in discrimination cases, overturning multiple cases which involved tests and other confusing analysis, specifically setting forth the following:

> "Today we reiterate that "convincing mosaic" is not a legal test. We overrule the opinions in the previous paragraph to the extent that they rely on "convincing mosaic" as a governing legal standard. We do not hold that any of those cases was wrongly decided; our concern is only with the treatment of "convincing mosaic" as if it were a legal requirement. From now on, any decision of a district court that treats this phrase as a legal requirement in an employment-discrimination case is subject to summary reversal, so that the district court can evaluate the evidence under the correct standard.
> That legal standard, to repeat what we wrote in *Achor* and many later cases, is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."
>
> *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

It is in this spirit that Plaintiff responds herein.

A.     **Discrimination Based Upon Sex**

Confusingly, despite citing to the *Ortiz* case, the Defendant then cites to a four part *McDonnell Douglas* test for showing "reverse gender discrimination;" exactly the type of test that Ortiz overruled, in stating:

> "Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled "direct" and "indirect," that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors. With the rat's nest of surplus "tests" removed from the law of the circuit, we can turn back to Ortiz's claim and his supporting evidence."
> *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

Here, the Defendant attempts to set a completely different bar than actually exists for the Plaintiff via the exact type of four part test that was overturned by the Seventh Circuit in *Ortiz*. By their use of this test, Defendant pushes the Plaintiff to fit certain buzzwords, such that he has to show that something "fishy," or that there was specific background circumstances, etc., rather than showing that a reasonable jury could find discrimination. However, the proper standard here, as set forth in the Ortiz case is simple: "That legal standard, to repeat what we wrote in *Achor* and many later cases, is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

As such, the Defendant's entire framework for their argument for dismissal is faulty and is based upon case law that is no longer valid. This alone should lead to a denial of the Defendant's Motion for Summary Judgment. Here, the Plaintiff does not have to prove an elemental test that Dr. Weldy had a specific reason to discriminate against men, or to show that

7

this was somehow "fishy;" rather all he needs to show is enough evidence that a reasonable jury could find discrimination occurred. In this case, the Plaintiff can clear this hurdle by showing that similarly-situated females were treated far differently by the University, and specifically by Dr. Eric Weldy, who was the clear decision-maker here upon the issue of salary (Plaintiff's Fact ¶5).

Moreover, time and again, Eric Weldy showed personal animus for Preston Brown during his deposition. Despite the testimony of others about the hours worked by Preston Brown in working the equivalent of one-and-a-half jobs during his time at NIU, Weldy outright said that Plaintiff was not working all of the hours that he put on his timesheets and was lying on those documents (Plaintiff's Fact ¶6). Weldy also stated that he had received negative feedback about Preston Brown from Sharon Handelsman, despite the fact that Handelsman herself stated that she never had any problems with Preston Brown's performance (Plaintiff's Fact ¶7-8).

1. **Michele Hill**

In this matter, despite the Defendant's contention that any comparison to Michele Hill (white female) is somehow untimely, Michele Hill is a perfect comparator for the Plaintiff, and in fact, not only were their positions similar, the Plaintiff was actually required to do his own job and take over Michele Hill's responsibilities; all while watching Ms. Hill receive $15,000 more a year in salary (Defendant Fact ¶37; Plaintiff's Fact ¶9, 11, 18). While the Defendant claims that "since Hill left the position of Associate Director for Marketing for Hobsons at NIU in October 2013, any comparison is untimely;" this argument is disingenuous for two distinct reasons. One, as discussed above, this was not, in fact, this Court's ruling, and Defendant believes this is an incorrect interpretation of this Court's December 17, 2015 Order. Two, this statement is

misleading as to what Michele Hill did after October 2013, as she did not leave NIU, rather, a vast portion of her job responsibilities were transferred to Plaintiff and she was transferred within the department to a call center, which was considered to be an easier position (Plaintiff's Fact ¶9, 15). Hill then continued to work at NIU, in the admissions department, until March 30, 2015 (Plaintiff's Fact ¶25).

Initially, Michele Hill was hired for the position of Associate Director of Admissions handling marketing and Hobsons[1] (Defendant Fact ¶37). However, Hill had serious problems with Hobsons as outlined in correspondence between Sharon Handelsman and Kimberly Buster-Williams (Plaintiff's Fact ¶10-11). Due to these problems, in October 2013, all of Hill's Hobsons responsibilities were turned over to the Plaintiff (Plaintiff's Fact ¶9, 13, 14). The estimates of the number of hours that this involved are admittedly inconsistent throughout the depositions, but it was a "significant amount" of Hill's responsibilities according to Sharon Handelsman (Plaintiff's Fact ¶13). Kimberly Buster-Williams stated that "Hobsons was taken away from Michele, and she further testified that lots of hours were put towards Hobsons by Preston, and estimated it was around 20 additional hours a week (Plaintiff's Fact ¶14).

In October of 2013, Hill was then transferred to the call center, within the admissions department. Handelsman believed that while Hill was in the call center, "the strategic value of her work didn't warrant her salary." (Plaintiff's Fact ¶15). In fact, Sharon Handelsman, thought that Michele Hill's performance was so bad that she should have been terminated (Plaintiff's Fact ¶16). Handelsman even presented Dr. Weldy with reorganization charts where Hill would have been terminated. However, despite all of this, throughout their tenures with NIU, Hill made

---

[1] Hobsons was described by Handelsman as a "customer relationship management program" that sent out messages to students and prospective students (Plaintiff's Fact ¶10).

$15,000 more than Plaintiff (Plaintiff's Fact ¶17). In fact, Kimberly Buster-Williams and Sharon Handelsman had lengthy e-mail communication about this "inequity" (Plaintiff's Fact ¶11).

Sharon Handelsman also specifically went to Dr. Weldy and asked that Plaintiff be given extra compensation for the fact that he was "taking on Michele's -- part of Michele's responsibility, he was doing alot." (Plaintiff's Fact ¶19). Specifically, on February 28, 2014, Handelsman went to Dr. Weldy and "made the case that Preston Brown was working very hard, long hours to get the job done, and I said that he should get more compensation." (Plaintiff's Fact ¶19). However, Dr. Weldy claimed he did not recall this conversation and that he was unaware of Preston Brown's claim for additional compensation until October of 2014, when Preston asked for additional pay; and again in January of 2015 when he made another specific request to Weldy (Plaintiff's Fact ¶20).

As such, all of this action falls within the relevant statute of limitations, since this was an ongoing act on the part of Weldy to deny additional compensation for the Plaintiff from February 28, 2014 to January 27, 2015; without any response until October of 2014. This follows the *Adams* case as cited to in the Court's previous order, which bars discrete acts outside of the relevant statute of limitations, but not continuing violations. (Dkt. 39, p. 4, c*iting Adams v. City of Indianapolis*, 742 F.3d 720, 730.

However, even if the Court rules that this is not an ongoing violation, the request by Plaintiff for additional pay in October of 2014, which is undisputed, is well within 300 days of the Plaintiff's EEOC Complaint. Moreover, for that request, as well as the request in January of 2015 and subsequent grievance, Hill is still a relevant comparator since she was still working in the same capacity as she had been since October of 2013, in the same department as Plaintiff.

### 2. Crystal Garvey

Crystal Garvey, a white female, was given additional pay in 2014 and 2015 for covering the duties of a Director of Admissions position (Plaintiff's Fact ¶21). This specific work started after June of 2014 (Plaintiff's Fact ¶21). When asked why Garvey was given such pay in 2014 and 2015, Weldy stated that was based upon "the fact that I was asking her to do her current job as well as to do an additional job for a short period of time." (Plaintiff's Fact ¶21). Garvey's pay was increased over $2000 a month for taking on these additional duties (Plaintiff's Fact ¶22). In documents, Weldy, in fact, stated that not paying Garvey for doing these expanded duties could cause "an ethical employment issue." (Plaintiff's Fact ¶21). No such concerns were ever made when Plaintiff took over a large amount of Michele Hill's responsibilities.

### 3. Kimberly Buster-Williams

In addition, prior to Dr. Weldy's hire, Kimberly Buster-Williams received extra pay in the amount of $20,000 a year for performing the duties of Vice President of Enrollment Management (Plaintiff's Fact ¶4). Dr. Weldy, however, even after hiring Sharon Handelsman to take over that role, continued to pay Kimberly Buster-Williams this additional salary based upon her partial performance of the some of the duties of that position (Plaintiff's Fact ¶4, 23). This is identical to what Preston Brown did, but was not compensated.

### B. Discrimination Based Upon Race

In addition to Michele HIll and Crystal Garvey, who are white females, Dan House, a white male, was also given additional pay for "taking on this additional position." (Plaintiff's Fact ¶24). Specifically, Dan House, despite not even being in the Admissions Department, and having no formal Admissions background, took over the duties of Associate Vice President for

11

Enrollment Management when it was vacated by Kimberly Buster-Williams, making him the direct supervisor of Preston Brown; and received additional pay for doing so (Plaintiff's Fact ¶24). Dan House was a Director of Research in the provost's office prior to his taking of this position (Plaintiff's Fact ¶24).

### C. Additional Argument on Title VII Discrimination

Time and again, Dr. Weldy chose to reward non-black, non-male candidates for their taking on additional responsibilities at NIU throughout 2014 and 2015, even referring to the idea of not doing so as an "ethical employment issue," but time and again turned a deaf ear to such requests on behalf of Preston Brown. This occurred even when Sharon Handelsman, went to Dr. Weldy asking him for additional pay for Preston Brown. Here, the Plaintiff has produced sufficient proof that a reasonable jury could find that this was due to discriminatory rationale by Dr. Weldy against Preston Brown, a black male; especially when viewed in the light of the animus shown by Dr. Weldy toward Plaintiff in his deposition.

### D. Defendant NIU's Non-Discriminatory Rationale is Pretextual at Best

Plaintiff can show that Defendant's explanation was pretextual in that it (1) had no basis in fact; (2) was not the real reason; or (3) was insufficient to motivate the action. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir.2002). The Defendant's argument here fails, as they state that employees throughout NIU were asked to "take on new or additional duties without financial compensation." (Defendant's Motion, Dkt. No. 66, p.10). However, as shown above, time and again, throughout the admissions department alone, certain individuals were paid for taking over such additional duties. Moreover, a blanket statement that others had to do this, without any actual specifics, is nothing more than mere puffery.

There is absolute, distinct and specific proof that Dr. Weldy harbored animus against Plaintiff, and it up to a jury to determine if this animus was discriminatory in nature. While Dr. Weldy time and again gave other employees additional pay for taking on additional duties; the Plaintiff was not given the same, even after Sharon Handelsman asked for more pay for the Plaintiff. Rather, Dr. Weldy testified that he did not believe what Brown put on his timesheets, basically accusing Brown of falsifying those documents.

## VI. PLAINTIFF'S RETALIATION ARGUMENT

As stated above, the Plaintiff has agreed to a dismissal of his retaliation count, with prejudice.

## V. PLAINTIFF'S EQUAL PAY ARGUMENT

The Equal Pay Act forbids employers from paying different rates to men and women for the same work at the same "establishment." 29 U.S.C. § 206(d)(1). For a successful claim, plaintiff must show that (1) higher wages were paid to an employee of the opposite sex, (2) the work requires substantially similar skill, effort and responsibilities, and (3) the work of the employees was performed under similar working conditions. *Bragg v. Navistar International Transport Corporation*, 164 F.3d 373, 378 (7th Cir, 1998).

The Defendant's entire argument on this matter is faulty, as they claim that comparisons to Garvey and Hill are untimely due to the EEOC's 300-day rule and this Court's previous order. However, as discussed above, there is no requirement that a Plaintiff go to the EEOC prior to making an Equal Pay Act Complaint, and moreover, the Equal Pay Act has an entirely different Statute of Limitations. Specifically, the Equal Pay Act actually has two separate statutes of limitation, specifically two years for any violation and three years if the violation was willful. 29

U.S.C. § 255(a).

Here, based upon the Plaintiff's Title VII claim, the Plaintiff is making a claim that NIU's failure to follow the Equal Pay Act was a willful violation. Thus, since Mr. Brown filed this Complaint on July 6, 2015 with an Equal Pay Act Claim, Mr. Brown is suing with regard to any and all failures to pay Plaintiff an equal amount all the way back to July 6, 2012, which covers every single issue covered in this brief. Arguendo, even if it were determined not to be willful, then it would still contain all actions since July 6, 2013, which would his taking over of Michele Hill's job responsibilities.

The Court's previous ruling on the EEOC 300 day rule is completely irrelevant under the Equal Pay Act and does not govern. As such, the Defendant's argument that the comparators of Garvey (sic) and Hill are outside of the proper time frame is completely erroneous; and since this is basically the entire argument advanced by the Defendant as to why Count III of the Plaintiff's Complaint should be dismissed, the Defendant's Motion on this Count specifically, should be denied. Moreover, the Defendant should not be allowed to now take a second bite at the apple and be able to make an entirely new argument in their Reply in this matter once they realize that the entire basis for their argument for dismissal of this issue is erroneous; and any such arguments have been waived at this point. If and when such arguments do occur, this Court should consider them to be improper as the Plaintiff would not have the opportunity to respond to any untimely new arguments offered up by Defendant.

Moreover, a review of the facts that support the Equal Pay Act claim show that there is no question that Plaintiff has demonstrated that Michele Hill was paid more, for a job that was basically taken over in a significant way by Preston Brown, under the exact same working

conditions. The Equal Pay Act requires the party to show equal work, here, Plaintiff can show even more -- that he did the work of the higher paid employee.

WHEREFORE Defendant's Motion for Summary Judgment, with respect to Count I and Count III should be denied, and this matter set for trial on those issues.

                                        Respectfully Submitted,

By:      /s/ Justin E. Burtnett
           Attorney for Plaintiff

Justin Burtnett
Burtnett Law Office LLC
155 North Michigan Avenue, Suite 500
Chicago IL 60601
(312) 574-0155
Attorney Code No. 6281100

Clarissa Y. Cutler
Attorney at Law
155 North Michigan Avenue, Suite 500
Chicago IL 60601
(312) 729-5067
Attorney Code No. 6257909